**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| **MICHAEL POPE, Individually, and on Behalf of Others Similarly Situated** 2176 N Brandywine Street Arlington, VA 22207 and | : : : | |
| **SARAH ABEL, Individually, and on Behalf of Others Similarly Situated** 1005 First Street NE, Apt. 551 Washington, DC 20002 and | : : : : | |
| **JORDYNN GOINS, Individually, and on Behalf of Others Similarly Situated** 2 M Street NE, Apt. 704 Washington, DC 20002 | : : : : | **Case No. _____** |
| **Plaintiffs,** | : | |
| v. | : | |
| **YAZAM INC., d/b/a EMPOWER** 6731 Whittier Avenue, Suite A-100 McLean, VA 22101 | : : | |
| **Serve:   Registered Agents Inc.** **1717 N Street NW, Suite 1** **Washington, DC 20036** | : : : | |
| **Defendant.** | | |

## CLASS ACTION COMPLAINT AND JURY DEMAND
### (Misleading Consumers regarding Intentional and Ongoing Violations of District of Columbia Consumer-Safety Laws in Violation of the Consumer Protection Procedures Act)

Plaintiffs, Michael Pope, Sarah Abel, and Jordynn Goins, individually and on behalf of all others similarly situated, through their attorneys, Patrick M. Regan, Christopher J. Regan, Emily C. Lagan, and the law office of Regan Zambri Long PLLC, respectfully demand judgment against Defendant, Yazam Inc. d/b/a Empower, on the grounds and in the amount set forth below:

### INTRODUCTION

1.      A ridesharing company, doing business under the trade name "Empower," markets itself to District of Columbia consumers as a cheaper alternative to Uber and Lyft; however, it turns out Empower achieves that cheapness by intentionally violating the District's consumer-safety laws, including specifically the ones mandating that rideshare companies maintain $1 million of insurance coverage to protect passengers (and other innocent road users or bystanders) in the event of a crash, perform specific background checks of their drivers, and verify that the vehicles used to provide its rides have passed safety inspections.

2.      Through its actions, Defendant Empower not only fraudulently misleads its passenger-consumers; it also exposes them, other road users, and even its own drivers to (among other things) the risk of financial ruin in the event of a crash.

3.      Plaintiffs bring this class action to recover for the damages they and all others similarly situated have suffered from Defendant Empower's intentional and continuing violations of the District of Columbia Consumer Protection Procedures Act ("CPPA").

Regan Zambri Long
1919 M Street, NW
Suite 600
Washington, D.C. 20036

202-463-3030

- 2 -

## JURISDICTION AND VENUE

4.      Jurisdiction is vested in this Court pursuant to 28 U.S.C. § 1332 based on diversity of citizenship and an amount in controversy which exceeds $75,000.  This Court also has subject matter jurisdiction pursuant to the provisions of 28 U.S.C. § 1332(d), as the amount in controversy exceeds the value of $5,000,000.00, this is a class action, and one or more Plaintiffs are citizens of a state different from the state of citizenship of Defendant.

5.      This Court has personal jurisdiction over Defendant pursuant to Fed. R. Civ. P. 4(k)(1) and D.C. Code § 13-423(a)(1)-(4).

6.      Venue is proper in this Court pursuant to the provisions of 28 U.S.C. § 1391(b)(2), as acts and/or omissions alleged in this Complaint occurred in the District of Columbia. Moreover, Defendant Empower regularly transacts business in the District of Columbia.

## PARTIES

7.      Plaintiff Michael Pope is an adult resident of the Commonwealth of Virginia.

8.      Plaintiff Sarah Abel is an adult resident of the District of Columbia.

9.      Plaintiff Jordynn Goins is an adult resident of the District of Columbia.

10.     Defendant Yazam Inc. d/b/a Empower ("Empower"), is a Delaware corporation with its headquarters and principal place of business in the Commonwealth of Virginia.

Regan Zambri Long
1919 M Street, NW
Suite 600
Washington, D.C. 20036

202-463-3030

- 3 -

## FACTS COMMON TO ALL COUNTS

### Empower: Marketed to Consumers as "Uber/Lyft, only Cheaper"

11.     Empower is a rideshare service that dispatches drivers to customers on demand through a cell phone application, or "app," in certain markets within the United States.

12.     Upon information and belief, Defendant Empower has operated within the District of Columbia since at least June 1, 2020, the date on which it registered with the Department of Consumer and Regulatory Affairs.

13.     As of February 2024, Empower had provided over two million rides in the District of Columbia to over one hundred and fifty thousand riders.

14.     The Empower app is free to download and install on a smartphone.

15.     On its website,[1] Empower pitches itself to consumers explicitly as a "rideshare" company, an alternative to Uber and Lyft:

Regan Zambri Long
1919 M Street, NW
Suite 600
Washington, D.C. 20036

202-463-3030

---

[1]     https://driveempower.com/ (last accessed 12/04/2024).

- 4 -



16.    Defendant Empower sets the default fares that its passengers will be charged for rides booked through its app; Empower drivers must take affirmative steps to modify them.

17.    Defendant Empower collects and distributes the fares for rides booked through its app.

18.    Defendant Empower sets cancellation charges for rides booked through its app and does not permit either drivers or riders to negotiate over such fares.

Regan Zambri Long
1919 M Street, NW
Suite 600
Washington, D.C. 20036

202-463-3030

19.     Through its app, Defendant Empower provides GPS navigation to its drivers and its drivers are expected to follow the GPS to the ride destination.

20.     Defendant Empower monitors driver performance through a rider feedback and ranking system.

21.     Defendant Empower requires that drivers respond to riders' ride requests within a timeframe that is acceptable to Defendant Empower.

22.     Defendant Empower further boasts that it is better than Uber and Lyft for both drivers and riders, and at a reliably lower price point[2]:

## Better for Drivers

At Empower, we treat drivers like customers, because they are. Drivers set their own rates and get 100% of the fare. They have access to their own dedicated local customer support team and are provided with the information and tools they need to take control of their financial future.

## Better for Riders

Riders using Empower pay 20% less on average compared to Uber or Lyft. Riders also can request a driver they feel safe with by limiting ride requests to favorite or same gender drivers.

Get $10+in free rides when you sign up!

23.     The promotional screenshots posted by Defendant Empower in the Google Play and Apple app stores trumpet the same message:

Regan Zambri Long
1919 M Street, NW
Suite 600
Washington, D.C. 20036

202-463-3030

_____

[2]     https://driveempower.com/ (last accessed 12/04/2024).

  

24.     Prospective riders can download the app, set up an account, and order rides without ever being told terms of service exist, let alone being directed to read them.

25.     In the process of downloading the app, setting up an account, and ordering rides, Prospective riders are never informed of <u>how</u> Defendant Empower delivers what it represents to be the same service at such a discounted price.

**THE SECRET REVEALED (Part I):**
**Defendant Empower Intentionally Chooses Not to Carry Insurance**
**Required by Law to Protect Consumers**

26.     Vehicles for hire in the District of Columbia are regulated under the Taxicab Commission Establishment Act (the "Act") (D.C. CODE § 50-301 et seq).

27.     For the protection of its citizen-consumers, the Act requires (in relevant part) that rideshare companies such as Defendant Empower either (1) procure a primary automobile liability insurance policy that provides coverage of at least $1 million per occurrence to protect passenger-consumers when they are riding in the vehicle or (2)

Regan Zambri Long
1919 M Street, NW
Suite 600
Washington, D.C. 20036

202-463-3030

- 7 -

explicitly verify that its drivers themselves maintain the required coverage.  D.C. CODE §
50-301.29c.

28.     If the rideshare company chooses option 2, it is forbidden to allow the driver
to drive passengers unless and until the rideshare company has verified that the driver
actually maintains the required coverage; if the driver's coverage lapses at any point, then
the rideshare company itself must provide the required coverage.  D.C. CODE § 50-
301.29c.

29.     Regardless of which option a rideshare company chooses, "[t]he insurance
requirements set forth in [D.C. Code § 50-301.29c] shall be disclosed on a private vehicle-
for-hire company's website, and the company's terms of service shall not contradict or be
used to evade the insurance requirements of this section."  D.C. CODE § 50-301.29c(h)

30.     Throughout the time it has operated in the District of Columbia, Defendant
Empower has not provided its DC drivers with a primary automobile liability insurance
policy that provides coverage of at least $1 million per occurrence for their work as
Empower drivers.

31.     Throughout the time it has operated in the District of Columbia, Defendant
Empower has not provided its DC drivers any automobile insurance <u>at all</u> for their work
as Empower drivers.

32.     Throughout the time it has operated in the District of Columbia, Defendant
Empower has not required its DC drivers to maintain a primary automobile liability
insurance policy that provides coverage of at least $1 million per occurrence for their work
as Empower drivers.

33.     Throughout the time it has operated in the District of Columbia, Defendant Empower has not required its DC drivers to maintain any automobile insurance <u>at all</u> for their work as Empower drivers.

34.     Throughout the time it has operated in the District of Columbia, Defendant Empower has not verified whether its DC drivers maintained any automobile insurance <u>at all</u> for their work as Empower drivers.

35.     Throughout the time it has operated in the District of Columbia, Defendant Empower has not maintained records of whether each of its DC drivers maintained automobile insurance and in what amounts.

36.     Throughout the time it has operated in the District of Columbia, Defendant Empower has not disclosed on its website the insurance requirements set forth in D.C. CODE § 50-301.29c.

37.     At the time of this filing, Defendant Empower's terms of service both contradict and evade the insurance requirements set forth in D.C. CODE § 50-301.29c.

38.     Throughout the time it has operated in the District of Columbia, Defendant Empower has put its drivers on the road with knowing indifference to whether or not they were covered by <u>any</u> insurance, let alone the amounts required of rideshare companies and drivers under District of Columbia law, recklessly endangering not only its own passengers (District of Columbia consumers), but also the other motorists, cyclists, pedestrians, and everyone else who must share the road with Defendant Empower's drivers.

Regan Zambri Long
1919 M Street, NW
Suite 600
Washington, D.C. 20036
—————
202-463-3030

39.    In the entire time Defendant Empower has operated in the District of Columbia, consumers were never informed (even after downloading the app, setting up an account, and ordering rides) that one way in which Defendant Empower delivers cheaper rides is by consciously violating the District of Columbia's insurance requirements for rideshare companies.

40.    Even now, consumers are <u>still</u> never informed that one way in which Defendant Empower delivers cheaper rides is by consciously violating the District of Columbia's insurance requirements for rideshare companies.

41.    Even the most curious, internet-savvy, and diligent consumer would be hard-pressed to find any insurance information on Defendant Empower's website—were one to navigate to the FAQs page, scroll down into the "Drivers" section (as opposed to the "Riders" section), all one would find is the following cryptic statement:

> **Does Empower provide insurance?**    —
>
> Empower does not currently provide insurance to drivers; however, we are working on establishing relationships with insurance carriers to help provide drivers with the most affordable options. If you do not feel that your existing coverage will properly cover you, we suggest that you purchase additional coverage.
>
> Using Empower, drivers keep 100% of the fare. With Uber and Lyft, drivers get 60% on average. Many drivers are making thousands of dollars more per month. With increased earnings, drivers can now afford to run their own businesses, and we are working hard to provide additional services to assist you.

42.    With the FAQ response above, Defendant Empower knowingly misleads its own would-be drivers, too—Defendant Empower knows full well that under virtually no circumstances will the "existing coverage" possessed by its would-be drivers through their

Regan Zambri Long
1919 M Street, NW
Suite 600
Washington, D.C. 20036
_____
202-463-3030

personal automobile insurance policies provide coverage while the insured is working as a rideshare driver.  Rather than advise its would-be drivers of that fact, it misleads them, too, attempting to dump on them the responsibility to research District of Columbia insurance law on the subject.

43.    By choosing, in direct and knowing violation of District of Columbia law, not to obtain the required insurance coverage, not to require its drivers to obtain the required insurance coverage, not to verify whether its drivers obtain the required insurance coverage, not to disclose the insurance requirements on its website, and to remain willfully blind as to whether or not its drivers are in fact carrying <u>any</u> insurance coverage, Defendant Empower not only fraudulently misleads its passenger-consumers; it also exposes them, other road users, and even its own drivers to the risk of financial ruin in the event of a crash.

**THE SECRET REVEALED (Part II):**
**No Background Checks, Either**

44.    For the protection of citizen-consumers, before a rideshare company ever dispatches a driver to consumers, the District of Columbia also requires that rideshare companies such as Defendant Empower retain an accredited third-party to conduct a background check on that driver, including specifically "(1) A local and national criminal background check; (2) The national sex offender database background check; and (3) A full driving record check."  D.C. CODE §§ 50-301.29b(b); 50-301.29a(6).

45.    Should a background check reveal certain prior offenses (for example, certain enumerated violent and/or sex crimes) for a given driver, that driver must be

Regan Zambri Long
1919 M Street, NW
Suite 600
Washington, D.C. 20036

202-463-3030

rejected and permanently disqualified from working as a rideshare driver in the District of Columbia.  D.C. CODE § 50-301.29b(c).

46.     Throughout the time it has operated in the District of Columbia, Defendant Empower has not performed on all its drivers the background checks required by D.C. CODE § 50-301.29b(b).

47.     Throughout the time it has operated in the District of Columbia, Defendant Empower has not performed on <u>any</u> of its drivers the background checks required by D.C. CODE § 50-301.29b(b).

**THE SECRET REVEALED (Part III):**
**Just for Good Measure, No Vehicle Inspections, Either**

48.     For the protection of citizen-consumers, the District of Columbia also requires that rideshare companies such as Defendant Empower require and verify that the vehicles used to give rides through their platforms have undergone (and passed) annual safety inspections.  D.C. CODE § 50-301.29a(4) and (5).

49.     Throughout the time it has operated in the District of Columbia, Defendant Empower has not verified that the vehicles used to give rides through its platform have passed the annual safety inspections required by D.C. CODE § 50-301.29a(4) and (5).

**THE D.C. COURT OF APPEALS RULES:**
**Empower is a Rideshare Company**

50.     In November 2020, the D.C. Department of For-Hire Vehicles ("DFHV") issued an *ex parte* cease-and-desist letter to Empower, finding that it had violated at least three provisions of the D.C. Code and Municipal Regulations: (1) D.C. Code § 50-301.29a(12), requiring private vehicle-for-hire companies to register with DFHV; (2) 31

Regan Zambri Long
1919 M Street, NW
Suite 600
Washington, D.C. 20036

202-463-3030

D.C.M.R. § 1605.1, requiring digital dispatch services to register with DFHV; and (3) 31 D.C.M.R. § 1902.1, requiring private sedan businesses to register with DFHV.

51.    Empower appealed the order before the Office of Administrative Hearings ("OAH").

52.    OAH granted summary judgment to DFHV, ruling that Empower is a private vehicle-for-hire company subject to the regulatory authority of the D.C. Department of For-Hire Vehicles ("DFHV"). OAH further upheld the cease-and-desist order issued to Empower by DFHV.

53.    On February 29, 2024, the District of Columbia Court of Appeals ruled that Empower is a private vehicle-for-hire company subject to the regulatory authority of the DFHV and the Act (D.C. Code § 50-301 et seq.).

54.    In ruling that Empower is subject to the Act, the Court of Appeals observed: The contract between Empower and its subscribers is designed to enable drivers to use digital dispatch to connect with passengers and give them rides in private vehicles for hire.

> We conclude from the Act's structure and purpose that Empower therefore is properly viewed as a private vehicle-for-hire company subject to DFHV's regulation under the Act . . . We decline to adopt a reading of the Act that would leave unregulated the activities of Empower and its subscribers/ drivers in providing rides to passengers in vehicles for hire.

*Yazam, Inc., d/b/a Empower v. D.C. Dept. of For-Hire Vehicles*, 310 A.3d 616, 624 (D.C. 2024).

## FACTS SPECIFIC TO THE NAMED PLAINTIFFS

### Michael Pope

55.     On dozens of occasions in the time Defendant Empower has operated in the District, Mr. Pope requested, took, and paid for rides through the Empower app that began and/or ended in the District of Columbia.

56.     At the time of those rides, Mr. Pope believed Defendant Empower to be a legally operating rideshare company, vetted and regulated by the District of Columbia, with all the reasonable consumer-safety guarantees attendant to that, including specifically minimum requirements regarding reasonable insurance coverage, background checks, and vehicle inspections.

57.     Had he known Defendant Empower was operating illegally, knowingly ignoring the District of Columbia's insurance, background check, and vehicle inspection requirements discussed above, Mr. Pope would never have booked rides with Empower.

### Sarah Abel

58.     On May 16, 17, 27, and 28, 2023, Plaintiff Sarah Abel requested, took, and paid for rides through the Empower app that began and/or ended in the District of Columbia.

59.     At the time of those rides, Ms. Abel believed Defendant Empower to be a legally operating rideshare company, vetted and regulated by the District of Columbia, with all the reasonable consumer-safety guarantees attendant to that, including specifically minimum requirements regarding reasonable insurance coverage, background checks, and vehicle inspections.

60.    Had she known Defendant Empower was operating illegally, knowingly ignoring the District of Columbia's insurance, background check, and vehicle inspection requirements discussed above, Ms. Abel would never have booked rides with Empower.

**Jordynn Goins**

61.    From February 10, 2024, through August 9, 2024, Plaintiff Jordynn Goins requested, took, and paid for more than 90 rides through the Empower app that began and/or ended in the District of Columbia.

62.    At the time of those rides, Ms. Goins believed Defendant Empower to be a legally operating rideshare company, vetted and regulated by the District of Columbia, with all the reasonable consumer-safety guarantees attendant to that, including specifically minimum requirements regarding reasonable insurance coverage, background checks, and vehicle inspections.

63.    Had she known Defendant Empower was operating illegally, knowingly ignoring the District of Columbia's insurance, background check, and vehicle inspection requirements discussed above, Ms. Goins would never have booked rides with Empower.

**CLASS ACTION ALLEGATIONS**

64.    Plaintiffs seek to bring this case on behalf of themselves and all other passenger-consumers who have taken rides through the Empower app in the District of Columbia.  This case is maintainable as a class action under FED. R. CIV. P. 23(b)(1) and FED. R. CIV. P. 23(b)(3).

Regan Zambri Long
1919 M Street, NW
Suite 600
Washington, D.C. 20036

202-463-3030

65.    The class shall be defined as all Empower passenger-consumers who through the Empower app have booked and taken rides beginning or ending in the District of Columbia during the time Empower has operated here.

66.    The proposed class is so numerous that joinder of all members is impractical.  Upon information and belief, Defendant Empower employs thousands of drivers who provide rides through the Empower app in the District of Columbia.  Upon further information and belief, tens of thousands of passenger-consumers have taken rides through the Empower app in the District of Columbia.

67.    Defendant Empower's choices not to abide by District of Columbia law was common to all passenger-consumers in the proposed class, because Defendant Empower (1) chose not to maintain a primary automobile insurance policy that provides coverage of at least $1 million per occurrence that covered its drivers when they were dispatched to drive passenger-consumers for Empower; (2) chose not to ensure that Empower drivers possessed coverage of at least $1 million per occurrence that covered them when they were dispatched to drive passenger-consumers for Empower; (3) chose not to disclose the insurance requirements set forth in D.C. CODE § 50-301.29c on its website; (4) chose not to retain an accredited third-party to conduct the background checks required by D.C. CODE § 50-301.29b(b) on Empower drivers prior to approving them to accept rides through the Empower platform; and (5) chose not to verify that the vehicles used to give rides through its platform had passed the annual safety inspections required by D.C. CODE § 50-301.29a(4) and (5).  Accordingly, Defendant Empower's violations of D.C. Code to

Regan Zambri Long
1919 M Street, NW
Suite 600
Washington, D.C. 20036
_____
202-463-3030

the detriment of Plaintiffs is typical and representative of the violations suffered by all past or present passenger-consumers of Defendant Empower.

68.     Plaintiffs can, and will, adequately represent the interests of the class because Plaintiffs are similarly situated with, and have suffered similar injuries as, the members of the class they seek to represent. Plaintiffs have no interests that conflict with or are antagonistic to the interests of the entire class. Plaintiffs have retained Patrick M. Regan, Christopher J. Regan, and Emily C. Lagan of Regan Zambri Long PLLC, who are competent to represent the class and will vigorously prosecute this litigation.

69.     In accordance with FED. R. CIV. P. 23(b)(1) and (3), this class action is superior to any other available method for the fair and efficient adjudication of the controversy because:

a. Common questions of law and fact predominate over any individual questions that may arise, because all claims involve Defendant Empower's choices not to (1) maintain a primary automobile insurance policy that provides coverage of at least $1 million per occurrence that covered its drivers when they were dispatched to drive passenger-consumers for Empower; (2) ensure that Empower drivers possessed coverage of at least $1 million per occurrence that covered them when they were dispatched to drive passenger-consumers for Empower; (3) disclose the insurance requirements set forth in D.C. Code § 50-301.29c on its website; and (4) retain an accredited third-party to conduct a background check on Empower drivers prior to approving them to accept rides through the Empower platform.

b. No member of the class has a substantial interest in individually controlling the prosecution of a separate action.

c. Upon information and belief, there are no pending lawsuits concerning this controversy.

Regan Zambri Long
1919 M Street, NW
Suite 600
Washington, D.C. 20036

202-463-3030

d.  It is desirable to concentrate the litigation of these claims in this forum since the acts complained of took place in the District of Columbia and this forum is convenient to the parties, the class members, and potential witnesses. The resolution of the claims of all class members in a single forum, and in a single proceeding, would be fair and efficient means of resolving the issues raised in this litigation.

e.  The prosecution of separate actions by or against individual members of the class would create a risk of inconsistent or varying adjudications with respect to individual members of the class that would establish incompatible standards of conduct for the party opposing the class, and adjudications with respect to individual members of the class that would, as a practical matter, be dispositive of the interests of the other members not party to the adjudications or substantially impair or impede their ability to protect their interests.

f.  This class is specifically identifiable to facilitate provision of adequate notice and there will be no significant problems managing this case as a class action.

g.  Resolution of class members' claims in this single class action is superior to resolution of this controversy through the filing of a host of individual actions as a matter of efficiency, consistency and in that it removes economic and other barriers to class members pursuing their claims. Absent this class action, class members will not likely obtain redress of their injuries and Defendant Empower would retain the proceeds of its knowing and intentional violations of the laws of the District of Columbia.

70.  The case is also maintainable as a class action under FED. R. CIV. P. 23(b)(2) as Defendant Empower has operated illegally in the District of Columbia as an unlicensed rideshare company, and this conduct applies generally to the class so that final injunctive relief and/or declaratory relief is appropriate with respect to the class as a whole.

## COUNT I
### (Violations of D.C. Consumer Protection Procedures Act)

71.    Plaintiffs incorporate by reference the foregoing paragraphs.

72.    The purposes of the District of Columbia Consumer Protection Procedures Act ("CPPA") are to "(a) assure that a just mechanism exists to remedy all improper trade practices and deter the continuing use of such practices; (b) promote, through effective enforcement, fair business practices throughout the community; and (c) educate consumers to demand high standards and seek proper redress of grievances."  D.C. CODE § 28-3901.

73.    Under the CPPA, it is unlawful "to engage in an unfair or deceptive trade practice, whether or not any consumer is in fact misled, deceived, or damaged thereby, including to":

  a.  "represent that goods or services have a source, sponsorship, approval, certification, accessories, characteristics, ingredients, uses, benefits, or quantities that they do not have."  D.C. CODE § 28-3904(a).

  b.  "represent that a person has a sponsorship, approval, status, affiliation, certification, or connection that the person does not have." D.C. CODE § 28-3904(b).

  c.  "misrepresent as to a material fact which has a tendency to mislead." D.C. CODE § 28-3904(e).

  d.  "fail to state a material fact if such failure tends to mislead."  D.C. CODE § 28-3904(f).

  e.  "use innuendo or ambiguity as to a material fact, which has a tendency to mislead." D.C. CODE § 28-3904(f-1).

  f.  "advertise or offer goods or services without the intent to sell them or without the intent to sell them as advertised or offered."  D.C. CODE § 28-3904(h).

g. "make false or misleading representations of fact concerning the reasons for, existence of, or amounts of price reductions, or the price in comparison to price of competitors or one's own price at a past or future time."  D.C. CODE § 28-3904(j).

74.     Defendant Empower committed unlawful trade practices in violation of D.C. CODE §§ 28-3904(a), (b), (e), (f), (f-1), and/or (h) when it made the following misrepresentations and/or omissions of material fact that have a tendency to mislead:

a. Misleading District of Columbia consumers, including Plaintiffs, to believe that it is a rideshare company, similar to Uber and Lyft, with all the consumer-safety guarantees attendant to that, when behind closed doors it has continuously refused to comply with the relevant laws;

b. Conversely, not disclosing to District of Columbia consumers, including Plaintiffs, the material fact that it has continuously refused to comply with the District of Columbia's consumer-protection laws regarding rideshare companies;

c. Misleading District of Columbia consumers, including Plaintiffs, to believe that it is authorized to operate in the District of Columbia, when it is not;

d. Misleading District of Columbia consumers, including Plaintiffs, to believe that it is in compliance with the District of Columbia's consumer-protection rideshare laws, when it is not;

e. Misleading District of Columbia consumers, including Plaintiffs, to believe that Empower drivers are insured as required by law, when they are not;

f. Misleading District of Columbia consumers, including Plaintiffs, to believe that it has performed on its drivers the legally required background checks, when it has not;

g. Misleading District of Columbia consumers, including Plaintiffs, to believe that its vehicles had undergone the legally required annual vehicle safety inspections to protect consumers, when they did not;

h. Misleading District of Columbia consumers, including Plaintiffs, regarding the reasons for its ride prices in comparison to those of its rideshare competitors, chiefly Uber and Lyft;

i. Not disclosing to District of Columbia consumers, including Plaintiffs, the material fact that it was not authorized to operate in the District of Columbia;

j. Not disclosing to District of Columbia consumers, including Plaintiffs, the material fact that it does not obtain insurance for its drivers or verify that they carry it themselves, as required by the law;

k. Not disclosing to District of Columbia consumers, including Plaintiffs, the material fact that the majority of its drivers were entirely uninsured while working as Empower drivers;

l. Not disclosing to District of Columbia consumers, including Plaintiffs, the material fact that it did not perform the legally required background checks on its drivers; and

m. Not disclosing to District of Columbia consumers, including Plaintiffs, the material fact that its drivers did not have annual vehicle safety inspections.

75. Plaintiffs were in fact misled by Defendant Empower into believing that Empower complied with the District of Columbia's consumer-protection rideshare laws, including those requiring adequate insurance, driver background checks, and annual vehicle safety inspections to protect consumers.

76. Plaintiffs relied on Defendant Empower's representations that it is a rideshare company, similar to Uber and Lyft, authorized to operate in the District of Columbia, and accordingly believed that Defendant Empower complied with the District of Columbia's consumer-protection rideshare laws, including those requiring adequate insurance, driver background checks, and annual vehicle safety inspections to protect consumers.

Regan Zambri Long
1919 M Street, NW
Suite 600
Washington, D.C. 20036

202-463-3030

77.    Based on this reliance, Plaintiffs requested and took rides with Defendant Empower that began and/or ended in the District of Columbia.

78.    Had Plaintiffs known the truth—that Empower was willfully violating the District of Columbia's consumer-protection rideshare laws, including those requiring adequate insurance, driver background checks, and annual vehicle safety inspections to protect consumers—they would not have requested or taken rides through Defendant Empower.

79.    By representing to District of Columbia consumers that it can provide rideshare rides more cheaply than Uber of Lyft (*see supra* ¶ 23), but not explaining that it does so by violating its legal duties (1) to provide the insurance required under District of Columbia law (2) to conduct background checks of its drivers, and (3) to ensure that its vehicle undergo annual vehicle safety inspections, Defendant Empower further misled consumers, including Plaintiffs, concerning the reason for its price in comparison to its competitors' prices, in violation of D.C. CODE §§ 28-3904(j).

80.    The CPPA protects consumers not only from the unlawful trade practices specifically enumerated in D.C. CODE § 28–3904, but also from practices prohibited by other statutes and the common law.

81.    For the protection of passenger-consumers, D.C. CODE § 50-301.29c(h) requires as follows of rideshare companies: "The insurance requirements set forth in this section shall be disclosed on a private vehicle-for-hire company's website, and the company's terms of service shall not contradict or be used to evade the insurance requirements of this section."

Regan Zambri Long
1919 M Street, NW
Suite 600
Washington, D.C. 20036
———
202-463-3030

82.     In violation of D.C. CODE § 50-301.29c(h) and the CPPA, Defendant Empower does not disclose the insurance requirements set forth in that section.

83.     In violation of D.C. CODE § 50-301.29c(h) and the CPPA, Defendant Empower's entire business model (including specifically the company's terms of service) appears to have been designed to evade the insurance requirements set forth in that section.

84.     For the protection of passenger-consumers, D.C. CODE §§ 50-301.29c(a),(b), and (d) require (in relevant part) that rideshare companies such as Defendant Empower either (1) procure a primary automobile liability insurance policy that provides coverage of at least $1 million per occurrence to protect passenger-consumers when they are riding in the vehicle or (2) explicitly verify that its drivers themselves maintain the required coverage; if the rideshare company chooses option 2, it is forbidden to dispatch the driver to drive passengers unless and until the rideshare company has verified that the driver actually maintains the required coverage; if the driver's coverage lapses at any point, then the rideshare company itself must provide the required coverage.  D.C. CODE § 50-301.29c.

85.     By choosing not to (1) provide the insurance required by D.C. CODE § 50-301.29c(a) or (2) verify that Empower drivers maintained the required insurance coverage; Defendant Empower violated D.C. CODE § 50-301.29c and the CPPA.

86.     For the protection of passenger-consumers, before a rideshare company ever dispatches a driver to consumers, District of Columbia law requires that rideshare companies such as Defendant Empower retain an accredited third-party to conduct a background check on that driver, including specifically "(1) A local and national criminal

Regan Zambri Long
1919 M Street, NW
Suite 600
Washington, D.C. 20036
———
202-463-3030

background check; (2) The national sex offender database background check; and (3) A full driving record check."  D.C. CODE §§ 50-301.29b(b); 50-301.29a(6).

87.    In violation of D.C. CODE § 50-301.29b, D.C. CODE § 50-301.29a, and the CPPA, Defendant Empower does not conduct of all its drivers the background checks required by that section.

88.    For the protection of its passenger-consumers, District of Columbia law requires that rideshare companies such as Defendant Empower verify that the vehicles used on their platforms have passed annual vehicle safety inspections.  D.C. CODE § 50-301.29a(4) and (5).

89.    In violation of D.C. CODE § 50-301.29a and the CPPA, Defendant Empower does not verify that the vehicles used on its platforms have passed the required annual vehicle safety inspections.

90.    Furthermore, Defendant Empower violated 31 DCMR §§ 1600, *et seq.*, and 31 DCMR §§ 1900, *et seq.*, by: (1) operating as a rideshare company without being licensed or registered as a rideshare company; (2) failing to carry the legally required insurance; (3) failing to conduct the required background checks on its drivers; and (4) failing to conduct annual vehicle safety checks.

91.    WHEREFORE, pursuant to the District of Columbia Consumer Protection Procedures Act, Plaintiffs, on behalf of themselves and all others similarly situated, demands the following remedies:

   A.    $1,500 per ride booked in violation of the District of Columbia Consumer Protection Procedures Act, payable to each consumer;

Regan Zambri Long
1919 M Street, NW
Suite 600
Washington, D.C. 20036

202-463-3030

B.  Reasonable attorney's fees and costs;

C.  Punitive damages in the amount of $25,000,000 or ten percent (10%) of the net value of Defendant Empower, whichever is higher; and

D.  An injunction against Defendant Empower's continuing use of its unlawful trade practices in the District of Columbia, including specifically its holding itself out to consumers as a rideshare company while simultaneously choosing to violate the consumer-safety laws applicable to rideshare companies, such as those requiring proper insurance coverage, the performance of driver background checks, the verification of annual safety inspections, and all other violations revealed through discovery.

E.  An order declaring that Defendant Empower unlawfully operated as a rideshare company in violation of D.C. Code §§ 50-301.29a – 50-301.29g, 31 DCMR §§ 1600, *et seq.* and 31 DCMR §§ 1900, *et seq.*

F.  Restoration to each consumer of all money acquired through the unlawful trade practices (*i.e.*, fares); and

G.  Any other relief the Court deems proper.

## COUNT II
### (Unjust Enrichment)

92.  Plaintiffs reallege and incorporate by reference the allegations contained in the preceding paragraphs of this Complaint as if fully set forth herein.

93.  Plaintiffs, and the class members, conferred a benefit on Defendant Empower by paying for ridesharing services.

94.  Defendant Empower received the benefit by accepting Plaintiffs' and class members' money despite the fact that Defendant Empower was not licensed to provide ridesharing services and chose not to comply with consumer-protection laws concerning

Regan Zambri Long
1919 M Street, NW
Suite 600
Washington, D.C. 20036

202-463-3030

insurance requirements, background checks, and safety inspections for rideshare companies.

95.     It would be inequitable and unjust for Defendant Empower to retain the benefit of Plaintiffs' money, and the money of the class members, without providing licensed ridesharing services.

96.     As a direct and proximate cause of Defendant's unjust enrichment, Plaintiffs (and the class) have suffered injury, and are entitled to reimbursement, restitution, and disgorgement from Defendant Empower of the monies paid to, and retained by, Defendant Empower.

97.     WHEREFORE, Plaintiffs, on behalf of themselves and all others similarly situated, demand judgment against Defendant Empower awarding and ordering disgorgement and restitution of the money paid by members of the class to Defendant Empower.

<u>**COUNT III**</u>
**(Contract Nullification/Voidance – Disgorgement)**

98.     Plaintiffs reallege and incorporate by reference the allegations contained in the preceding paragraphs of this Complaint as if fully set forth herein.

99.     In the District of Columbia, it is a principle of long standing that "an illegal contract, made in violation of a statutory prohibition designed for police or regulatory purposes, is void and confers no right upon the wrongdoer." *Capital Constr. Co. v. Plaza W. Coop. Ass'n*, 604 A.2d 428, 429 (D.C. 1992).

100.    Empower processed and accepted payment from consumers for rideshare services even though it was unlicensed as a rideshare company under the Act or under 31 DCMR §§ 1600, *et seq.*, and 31 DCMR §§ 1900, *et seq.*  The Act and 31 DCMR §§ 1600, *et seq.*, and 31 DCMR §§ 1900, *et seq.*, are designed to protect members of the public.

101.    Despite being unlicensed to operate as a rideshare company, Empower processed and accepted payment from consumers.

102.    Because Empower was unlicensed as a rideshare company, the transactions between Empower and District of Columbia consumers are void and unenforceable and must be nullified.

103.    WHEREFORE, Plaintiffs, on behalf of themselves and all others similarly situated, request that the Court (1) declare all transactions between the class and Defendant Empower to be void; and (2) disgorge all money Defendant Empower received from the members of the class.

## JURY TRIAL DEMAND

Plaintiffs hereby demand a trial by jury with respect to each claim in this Complaint.

Respectfully submitted,

REGAN ZAMBRI LONG PLLC

By: **/s/ Patrick M. Regan**

Patrick M. Regan                    #336107
pregan@reganfirm.com
Christopher J. Regan                #1018148
cregan@reganfirm.com
Emily C. Lagan                      #1645159
elagan@reganfirm.com
1919 M Street, NW, Suite 350
Washington, DC  20036
PH:  (202) 463-3030
Fx:  (202) 463-0667
*Counsel for Plaintiffs*

and

KLAPROTH LAW PLLC

By: **/s/ Brendan J. Klaproth**

Brendan J. Klaproth                 #999360
bklaproth@klaprothlaw.com
2300 Wisconsin Ave NW, Suite 100A
Washington, DC 20007
PH:  (202) 618-2344
*Counsel for Plaintiffs*