**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| MICHAEL POPE et al., <br><br> Plaintiff, <br><br> v. <br><br> YAZAM, INC. D/B/A EMPOWER, <br><br> Defendant. | Civil Action No. 1:24-cv-03540-CJN |

**DEFENDANT EMPOWER'S MOTION TO DISMISS**

KRAMER LEVIN NAFTALIS & FRANKEL LLP

Matthew M. Madden (D.C. Bar # 991139)
Lauren C. Andrews (D.C. Bar # 888314680)
2000 K Street NW, 4th Floor
Washington, DC 20006
Phone (202) 775-4500
Fax: (202) 775-4510
mmadden@kramerlevin.com
landrews@kramerlevin.com

*Counsel for Defendant Empower*

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ....................................................................................................... ii

INTRODUCTION ................................................................................................................... 1

BACKGROUND ..................................................................................................................... 1

    A.    Legal background................................................................................................. 1

    B.    Factual background ............................................................................................. 2

LEGAL STANDARD............................................................................................................... 4

SUMMARY OF ARGUMENT ................................................................................................ 5

ARGUMENT .......................................................................................................................... 5

I.    Plaintiffs lack standing to bring a CPPA claim .................................................. 5

II.    The Complaint does not state a CPPA claim ................................................... 10

    A.    The Complaint fails to state a claim based on Empower's supposed misrepresentations to consumers ...................................................................... 10

    B.    The Complaint fails to state a CPPA claim premised on Empower's alleged violations of D.C. laws governing private vehicle-for-hire companies ............... 11

III.    The Complaint does not state unjust enrichment or disgorgement claims ...................... 14

CONCLUSION...................................................................................................................... 14

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Nat'l Ins. Co. v. FDIC*,
  642 F.3d 1137 (D.C. Cir. 2011) ...................................................................................4

*Arbaugh v. Y & H Corp.*,
  546 U.S. 500 (2006) .......................................................................................................5

*Arpaio v. Obama*,
  797 F.3d 11 (D.C. Cir. 2015) .......................................................................................4

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) .......................................................................................................2

*DaimlerChrysler Corp. v. Cuno*,
  547 U.S. 332 (2006) .......................................................................................................7

*Dep't of Educ. v. Brown*,
  600 U.S. 551 (2023) ....................................................................................................4, 7

*Fort Lincoln Civic Ass'n, Inc. v. Fort Lincoln New Town Corp.*,
  944 A.2d 1055 (D.C. 2008) .........................................................................................12

*Glasgow v. Camanne Mgmt. Inc.*,
  261 A3d 208 (D.C. 2021) ............................................................................................14

*Gunn v. Minton*,
  568 U.S. 251 (2013) .......................................................................................................4

*Hancock v. Urban Outfitters, Inc.*,
  830 F.3d 511 (D.C. Cir. 2016) .....................................................................................8

*Hemby v. Biotab Nutracueticals*,
  No. 2014-CA-190, 2014 D.C. Super. LEXIS 28 (D.C. Super. Ct. Sept. 10,
  2014) ...............................................................................................................................8

*Hemp Indus. Ass'n v. DEA*,
  36 F.4th 278 (D.C. Cir. 2022) .....................................................................................4

*Ihebereme v. Capital One, N.A.*,
  933 F. Supp. 2d 86 (D.D.C. 2013), *aff'd* 573 F. App'x 2 (D.C. Cir. 2014) ............13

*J.P. v. District of Columbia*,
  189 A.3d 212 (D.C. 2018) ...........................................................................................12

## TABLE OF AUTHORITIES—Continued

**Page(s)**

*Kokkonen v. Guardian Life Ins. Co. of Am.*,
  511 U.S. 375 (1994) ................................................................................................4

*Kontrick v. Ryan*,
  540 U.S. 443 (2004) ................................................................................................5

*Krukas v. AARP, Inc.*,
  No. 18-cv-1124, 2021 WL 5083443 (D.D.C. Nov. 2, 2021) ..................................8

*Lee v. Canada Goose US, Inc.*,
  20 Civ. 9808 (VM), 2021 WL 2665955 (S.D.N.Y. June 29, 2021)...................10, 11

*Lillard & Lillard, P.C. v. Blue Cross & Blue Shield Ass'n*,
  971 F. Supp. 2d 116 (D.D.C. 2013) .......................................................................7

*Little v. SunTrust Bank*,
  204 A.3d 1272 (D.C. 2019) .....................................................................................8

*Lujan v. Defenders of Wildlife*,
  504 U.S. 555 (1992) ........................................................................................4, 6, 7

*Mann v. Bahi*,
  251 F. Supp. 3d 112 (D.D.C. 2017) ......................................................................13

*McNamara v. City of Chicago*,
  138 F.3d 1219 (7th Cir. 1998) ................................................................................9

*News World Comms., Inc. v. Thompsen*,
  878 A.2d 1218 (D.C. 2005) ...................................................................................14

*Saucier v. Countrywide Home Loans*,
  64 A.3d 428 (D.C. 2013) .......................................................................................11

*Settles v. U.S. Parole Comm'n*,
  429 F.3d 1098 (D.C. Cir. 2005) ..............................................................................5

*Shalom v. Smith*,
  304 A.3d 983 (D.C. 2023) .....................................................................................14

*Silvious v. Snapple Beverage Corp.*,
  793 F. Supp. 2d 414 (D.D.C. 2011) .......................................................................8

*Spokeo, Inc. v. Robbins*,
  578 U.S. 330 (2016).................................................................................................7

## TABLE OF AUTHORITIES—Continued

**Page(s)**

*Tolson v. Hartford Fin. Servs. Grp., Inc.*,
  278 F. Supp. 3d 27 (D.D.C. 2017) .......................................................................8

*Town of Chester, N.Y. v. Laroe Ests., Inc.*,
  581 U.S. 433 (2017) ...........................................................................................7

*TransUnion LLC v. Ramirez*,
  594 U.S. 413 (2021) .....................................................................................7, 8, 9

*West v. Lynch*,
  845 F.3d 1228 (D.C. Cir. 2017) .........................................................................5

*Wheeler v. Panini American, Inc.*,
  No. 22-cv-00763, 2022 WL 17039208 (D.D.C. Nov. 17, 2022) .............................8

*Woodford v. Yazam Inc. d/b/a Empower*,
  No. 22-CV-3665 (BAH), 2023 WL 8083975 (Nov. 21, 2023)...................... *passim*

**Statutes**

D.C. Code § 28-3904 ................................................................................. *passim*

D.C. Code § 28-3905 ...........................................................................................1

D.C. Code § 47-1431 .........................................................................................13

D.C. Code § 50-301.03 .......................................................................................1

D.C. Code § 50-301.07 .....................................................................................12

D.C. Code § 50-301.29 .....................................................................................11

**Other Authorities**

Fed. R. Civ. P. 12(b)(1)........................................................................................4

Fed. R. Civ. P. 12(h)(3)........................................................................................5

## INTRODUCTION

By Plaintiffs' own admission, their Complaint is "exceptionally similar to a prior action" against the same defendant. Dkt. 11 at 2. And they should know: Their counsel filed the prior action, naming a different plaintiff, and the Complaint here largely cuts-and-pastes the prior action's allegations and claims.

Judge Howell dismissed that prior action with prejudice for lack of subject matter jurisdiction. *Woodford v. Yazam Inc. d/b/a Empower*, No. 22-CV-3665 (BAH), 2023 WL 8083975 (Nov. 21, 2023) (Ex. A). Plaintiffs' Complaint should meet the same fate. In fact, these new Plaintiffs' lack of Article III standing is even clearer than the last plaintiff's. Whereas the last plaintiff failed to allege that defendant's supposed misstatements and regulatory violations *caused her alleged injuries*, these new Plaintiffs ***do not allege any injury at all***.

## BACKGROUND

### A.    Legal background

1. The Vehicle-for-Hire Innovation Amendment Act of 2014, D.C. Law, 20-197 (2014) ("VHIAA"), regulates private vehicle-for-hire companies, which it defines as "an organization . . . operating in the District that uses digital dispatch to connect passengers to a network of private vehicle-for-hire operators." D.C. Code § 50-301.03(16B). Private vehicle-for-hire companies must be licensed and comply with a number of regulatory requirements. The VHIAA does not provide a private right of action to persons aggrieved by a private vehicle-for-hire company's failure to comply with these regulations.

2. The District of Columbia Consumer Protection Procedures Act ("CPPA") provides a private cause of action arising out of certain "unfair or deceptive trade practices." D.C. Code §§ 28-3904, 28-3905. Section 28-3904 describes "unfair or deceptive" practices, such as making misrepresentations "that goods or services have a source, sponsorship, approval, certification,

accessories, characteristics, ingredients, uses, benefits, or quantities that they do not have," or "misrepresent[ations] as to a material fact which has a tendency to mislead." *See* D.C. Code § 28-3904(a)–(v). The CPPA also identifies specific statutes and sections of the D.C. Code for which violations are per se violations of the CPPA. D.C. Code § 28-3904(w)–(ll). The VHIAA (nor any other statutes or regulations applicable to private vehicle-for-hire companies) is included.

### B.    Factual background

Empower sells mobile software to independent business owners who wish to provide private vehicle for-hire transportation services to the public. Cplt. ¶ 11.[1] Unlike Uber and Lyft, which sell rides to their customers, set the rates charged for those rides, and pay drivers for providing rides to the companies' customers, Empower sells software to drivers who set their own rates and keep *100%* of the fares they charge to their own riders. Cplt. ¶¶ 15, 22, 41. Drivers do not have any contract with Empower to provide rides. Empower is thus "transforming rideshare" by "decentralizing" it such that individual drivers can work for themselves to provide their transportation services on behalf of themselves to riders, instead of getting paid to do so by, in an amount set by, and on behalf of someone else. Cplt. ¶ 15.

On its website, Empower plainly states that it "does not currently provide insurance to drivers." Cplt. ¶ 41. Empower's Software as a Service Agreement ("SaaS Agreement"), available at https://driveempower.com/saas/, also states that when a driver applies to use the software, they must pay a fee "for the background check conducted by Checkr, Empower's third-party background check provider." *See also* Cplt. ¶¶ 37, 83 (incorporating Empower's terms of service). And that SaaS Agreement requires drivers using Empower's software platform to comply with all

---

[1] Because this is a motion to dismiss, Empower takes these facts from Plaintiff's Complaint accepting all well-pleaded factual allegations as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). Empower, however, is not conceding that Plaintiffs can prove these allegations.

applicable laws—including those requiring annual vehicle-safety inspections. *See* SaaS Agreement, *supra*.

Each of the three Plaintiffs allege they used Empower's rider-facing software application to book rides with drivers who use Empower's driver-facing software application. Cplt. ¶¶ 55–63. None of the Plaintiffs alleges that they suffered ***any*** actual injury as the result of having done so. *See id.*

Despite alleging no injury of any kind from booking rides using Empower's software (or otherwise), Plaintiffs assert a putative class action under the CPPA. They allege that Empower engaged in unfair and deceptive trade practices by allegedly misrepresenting that it complies with insurance coverage, background check, and vehicle inspection requirements that apply to private vehicle for-hire companies in the District. *See, e.g.*, Cplt. ¶¶ XX, YY. Putting aside the fact that the facts presented in the Complaint itself demonstrate that no misrepresentation occurred, because the Complaint doesn't allege that Plaintiffs suffered any injury whatsoever it correspondingly doesn't allege that any injury would have been prevented had Empower not allegedly made any misrepresentations, let alone had Empower obtained insurance coverage, or had a different policy with respect to background checks, or vehicle inspections.[2]

The Complaint nevertheless states that Plaintiffs purport to represent a class of "all Empower passenger-consumers who through the Empower app have booked and taken rides beginning or ending in the District of Columbia during the time that Empower has operated here"—a class that Plaintiffs estimate to include "over one hundred and fifty thousand riders." Cplt. ¶¶ 13, 65. On behalf of themselves and that putative class, Plaintiffs seek, among other things, $1,500 for each of the "over two million rides" (Cplt. ¶ 13) (which would amount to over ***three***

---

[2] While not relevant to this motion to dismiss, Empower's policies with respect to background checks and vehicle inspections do, in fact, comply with D.C. regulations for private vehicle for-hire companies.

*billion dollars*), punitive damages "in the amount of $25,000,000 or ten percent (10%) of the net value of Defendant Empower, whichever is higher," and the reimbursement of all fares ever paid to Empower by D.C. consumers (which is zero because, as the Complaint itself makes clear (¶¶ 15, 22, 41), 100% of consumers' fares are paid *to their drivers* and none of them are paid *to Empower*). Cplt. ¶ 91.

## LEGAL STANDARD

Empower adopts the following legal standard stated in *Woodford*, Ex. A at 7–8:

Federal courts' "authority under the Constitution is limited to resolving 'Cases' or 'Controversies[,]' Art. III, § 2." *Dep't of Educ. v. Brown*, 600 U.S. 551, 561 (2023); *see also Gunn v. Minton*, 568 U.S. 251, 256 (2013) ("'Federal courts are courts of limited jurisdiction,' possessing 'only that power authorized by Constitution and statute.'") (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)). The doctrine of Article III standing is "an essential and unchanging part of [this] case-or-controversy requirement." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (citation omitted)).

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1), the plaintiff bears the burden of demonstrating the court's subject-matter jurisdiction over the claim at issue. *Arpaio v. Obama*, 797 F.3d 11, 19 (D.C. Cir. 2015) (citing *Lujan*, 504 U.S. at 561). When considering a motion to dismiss under Rule 12(b)(1), the court must determine jurisdictional questions by accepting as true all uncontroverted material factual allegations contained in the complaint and "constru[ing] the complaint liberally, granting plaintiff[s] the benefit of all inferences that can be derived from the facts alleged." *Hemp Indus. Ass'n v. DEA*, 36 F.4th 278, 281 (D.C. Cir. 2022) (second alteration in original) (quoting *Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011)). The court may also, "[a]s necessary, [] cull additional facts from

other parts of the record." *West v. Lynch*, 845 F.3d 1228, 1231 (D.C. Cir. 2017) (citing *Settles v. U.S. Parole Comm'n*, 429 F.3d 1098, 1107 (D.C. Cir. 2005) (in deciding subject matter jurisdiction, courts may "consider[] facts developed in the record beyond the complaint")). Absent subject-matter jurisdiction over a case, the court must dismiss it. *See Arbaugh v. Y & H Corp.*, 546 U.S. 500, 506–07 (2006) (citing *Kontrick v. Ryan*, 540 U.S. 443, 455 (2004); Fed. R. Civ. P. 12(h)(3)).

## SUMMARY OF ARGUMENT

I. Plaintiffs lack standing. Plaintiffs allege only that they took rides they booked through Empower's software—***without incident***. They do not allege any concrete injury of any kind—let alone any injury that is fairly traceable to Empower's alleged misrepresentations and alleged regulatory violations concerning insurance, background checks, or vehicle inspections. Plaintiffs' inability to allege injury-in-fact deprives them both of Article III constitutional standing and statutory standing under the D.C. consumer protection law that they invoke.

II. Plaintiffs fail to state a claim. The Complaint's own allegations demonstrate that Empower does *not* misrepresent itself to consumers, and in any event the CPPA does not state a private right of action for consumers to enforce alleged violations of D.C. laws and regulations that apply to private vehicle-for-hire companies.

## ARGUMENT

### I.     Plaintiffs lack standing to bring a CPPA claim

Plaintiffs allege that they took rides they booked with drivers through Empower's software application. Cplt. ¶¶ 55–63. One Plaintiff claims to have taken "more than 90" such rides, another took "dozens" of them, and the third took rides on at least four different occasions. ***None of these Plaintiffs claim to have suffered any injury whatsoever during or in connection with those rides***. *See id.* By all appearances, Plaintiffs' drivers faithfully transported them from their requested pick-

ups to their requested drop-offs, without incident, in exchange for the fares that Plaintiffs agreed to pay those drivers.

The Complaint nevertheless tries to turn Plaintiffs' uneventful, successful rides into a CPPA claim (and sweeping class action) by alleging that Empower engaged in unfair and deceptive trade practices by supposedly not adhering to insurance-coverage, background-check, and vehicle-inspection requirements that D.C. law imposes on private vehicle-for-hire companies. That CPPA claim fails for the straightforward reason that, lacking even the barest allegation that Plaintiffs suffered any concrete injury as a result of the alleged misrepresentations—Plaintiffs do not have Article III or statutory standing to bring it.

Plaintiffs concede that their attorneys already filed an "exceptionally similar" (Dkt. 11 at 2) putative class action against Empower—with a different named plaintiff—in December 2022. *See Woodford*, Ex. A. Judge Howell dismissed that prior action with prejudice for lack of subject matter jurisdiction. Unlike here, the *Woodford* plaintiff *did at least* allege she had been in a car accident and suffered actual injuries during a ride she booked using Empower's software. Nevertheless, Judge Howell held that the plaintiff had failed to allege that the car accident and plaintiff's allegedly resulting injuries were *caused by* Empower's supposed misrepresentations or violations. *See id.* As a result, the plaintiff lacked Article III standing to sue Empower under the CPPA.

In so holding, the *Woodford* court carefully explained the necessary prerequisites to obtain Article III standing:

> To establish Article III standing, plaintiff must plead and, ultimately, prove three elements: (1) that plaintiff suffered an "injury in fact" that is both "concrete and particularized" and "actual or imminent, not conjectural or hypothetical[,]" *Lujan,* 504 U.S. at 560 (quotation marks and citation omitted); (2) that plaintiff's injury must be "fairly [] trace[able]" to the challenged action of the defendant," meaning that "there must be a causal connection between the injury and the conduct

complained of," *id.* (quotation marks and citation omitted); and (3) that it must be "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision[,]" *id.* (quotation marks and citation omitted); *see also Brown*, 600 U.S. at 561; *Spokeo, Inc. v. Robbins*, 578 U.S. 330, 338 (2016). "If a dispute is not a proper case or controversy, the courts have no business deciding it [] or expounding the law in the course of doing so." *Town of Chester, N.Y. v. Laroe Ests., Inc.*, 581 U.S. 433, 438 (2017) (quoting *DaimlerChrysler Corp. v. Cuno,* 547 U.S. 332, 341 (2006)).

Ex. A at 8–9.

Plaintiffs' standing problem here is even more fundamental than in *Woodford*. While the *Woodford* plaintiff failed to allege any *causation* of her alleged car-accident injuries—under the "fairly traceable" element—Plaintiffs here do not allege ***any** concrete, actual, particularized injury at all*. Instead, they allege only "'bare procedural violations' of D.C. law 'divorced from any concrete harm,'" and thus lack constitutional and statutory standing under the "injury-in-fact" element. *Woodford*, Ex. A at 15 (quoting *TransUnion LLC v. Ramirez*, 594 U.S. 413, 440 (2021)). As *Woodford* made clear, it is a threshold standing requirement that any plaintiff "claiming violation of a statute must sufficiently allege facts showing that the claimed violation was causally connected *to an injury* that 'affected the plaintiff in a personal and individual way.'" Ex. A at 9 (alteration adopted and emphasis added) (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016)). Plaintiffs utterly fail to meet that standing requirement.

Indeed, *Woodford* and numerous other cases have squarely applied the injury-in-fact standing requirement to alleged violations of the CPPA. As *Woodford* held (Ex. A at 12), a CPPA plaintiff must be able to "allege that it has suffered [some] ***actual injuries***, financial or otherwise, as a result of defendants' alleged conduct" (quoting *Lillard & Lillard, P.C. v. Blue Cross & Blue Shield Ass'n*, 971 F. Supp. 2d 116, 119 (D.D.C. 2013) (first emphasis added)). It also reiterated (Ex. A at 9) a previous ruling that "[a] plaintiff pursuing a claim under the CPPA may not proceed based solely on the fact of a violation of the statute and ***must establish injury-in-fact***" (quoting

*Krukas v. AARP, Inc.*, No. 18-cv-1124, 2021 WL 5083443, at *12 (D.D.C. Nov. 2, 2021) (alteration in original and emphasis added)). And the *Woodford* court went on (Ex. A at 9) to cite additional cases dismissing CPPA claims where plaintiffs "failed to allege '***any cognizable injury***'" (*Hancock v. Urban Outfitters, Inc.*, 830 F.3d 511, 514 (D.C. Cir. 2016) (emphasis added)), and collecting still *more* authority "for the proposition that 'a lawsuit under the CPPA does not relieve a plaintiff of the requirement to show ***a concrete injury-in-fact to himself***'" (*Silvious v. Snapple Beverage Corp.*, 793 F. Supp. 2d 414, 417 (D.D.C. 2011) (emphasis added)).[3]

The *Woodford* court found "particularly instructive" (Ex. A. at 14–15) the D.C. Circuit's holding in *Hancock*, where plaintiffs brought a CPPA claim after a store collected their zip codes in alleged violation of a regulation against vendors conditioning credit card payments on requesting or recording a payor's address information. 830 F.3d at 514. As the *Woodford* court explained, however:

> The D.C. Circuit held the complaint could not "get out of the starting gate" because plaintiffs failed to allege that they "suffered any cognizable injury as a result of the zip code disclosures." Indeed, the plaintiffs' "naked assertion that a zip code was requested and recorded without any concrete consequence" was divorced from any real harm.

Ex A. at 14–15 (internal citation omitted) (quoting *Hancock*, 830 F.3d at 514). The *Woodford* court also relied on *Wheeler v. Panini American, Inc.*, No. 22-cv-00763, 2022 WL 17039208, at *7 (D.D.C. Nov. 17, 2022), which similarly held that a plaintiff lacked standing when defendant's failure to include instructions on the outside of a product box did not "cause[] plaintiff 'a harm traditionally recognized as providing a basis for a lawsuit in American courts,'" *id.* (quoting *TransUnion*, 594 U.S. at 417).

---

[3] *See also Tolson v. Hartford Fin. Servs. Grp., Inc.*, 278 F. Supp. 3d 27, 37–38 (D.D.C. 2017); *Little v. SunTrust Bank*, 204 A.3d 1272, 1273–75 (D.C. 2019); *Hemby v. Biotab Nutracueticals*, No. 2014-CA-190, 2014 D.C. Super. LEXIS 28, at *12–13 (D.C. Super. Ct. Sept. 10, 2014)).

Plaintiffs here likewise fail to get out of the starting gate. Without any allegation of concrete injury—and the Complaint contains literally no such allegation—there is no "injury-in-fact from the claimed statutory violation" from which Plaintiffs could possibly derive Article III standing. Ex. A at 15 (citing *TransUnion*, 594 U.S. at 434, 441–42); *see also McNamara v. City of Chicago*, 138 F.3d 1219, 1221 (7th Cir. 1998) ("A plaintiff who would have been no better off had the defendant refrained from the unlawful acts of which the plaintiff is complaining does not have standing under Article III of the Constitution to challenge those acts in a suit in federal court.").

Plaintiffs (and counsel responsible for this *Woodford* reprise) implausibly assert that the standing problems identified in *Woodford* are resolved here through Plaintiffs' boilerplate allegation that they "would never have booked rides with Empower" had they known that it was operating without DFHV registration and allegedly out of compliance with insurance, background-check, and vehicle-inspection requirements. *See* Cplt. ¶¶ 57, 60, 63. The *Woodford* plaintiff had not made such an allegation—likely because, as it turned out, she had continued to book dozens of rides using Empower even after filing her complaint. *See Woodford*, Ex. A at 12 n.4. Plaintiffs contend that "the key difference" between their Complaint and the *Woodford* complaint (attached as Ex. B) is that Plaintiffs, after "learning" of Empower's supposed misrepresentations and violations, allegedly "never took another Empower ride." Dkt. 11 at 2.

But Plaintiffs—and their counsel—completely disregard *Woodford*. **Plaintiffs do not allege any injury at all relating to** the rides they booked using Empower's software. The matter of causation is therefore beside the point. The allegation that Plaintiffs would not have taken their *wholly uneventful* rides, during which they experienced *no injury*, but for Empower's alleged misrepresentations and alleged violations plainly does not establish Plaintiffs' standing to sue under the well-settled standing principles already explained very clearly by the *Woodford* court.

It is inexcusable that Plaintiffs' counsel, who were counsel to the plaintiff in the "extraordinarily similar" *Woodford* case, have again sued Empower for more than three billion dollars in a putative class action on behalf of named Plaintiffs who so clearly lack Article III or statutory standing. The *Woodford* decision—and the numerous cases it relied on—could hardly be clearer that actual, concrete, particularized injury is an independent standing requirement in any CPPA case. Counsel's decision to bring the same claims, on behalf of three new Plaintiffs who demonstrably lack any injury-in-fact, merits not only dismissal with prejudice but also an award of attorney's fees and other appropriate relief.

## II.    The Complaint does not state a CPPA claim

Because Plaintiffs lack standing, the Court need not address the sufficiency of their allegations. But Plaintiffs also fail to state claims upon which relief can be granted. The Complaint on its face makes clear that Empower does not misrepresent itself to the public as a licensed private vehicle-for-hire company in compliance with regulations applicable to such companies. Nor does Empower's alleged violation of certain D.C. laws and regulations applicable to such private vehicle-for-hire companies amount to a per se violation of the CPPA generating a private right of action to enforce those laws and regulations. For those two reasons, even if Plaintiffs had standing (which they do not), Plaintiffs fail to state a claim for relief.

### A.    The Complaint fails to state a claim based on Empower's supposed misrepresentations to consumers

Plaintiffs allege that Empower has violated various CPPA provisions prohibiting false or misleading statements to consumers. *See* Cplt. ¶ 73 (citing D.C. Code § 28-3904(a), (b), (e), and (h)). A CPPA plaintiff alleging deception "*must establish that a misrepresentation was made.*" *Lee v. Canada Goose US, Inc.*, 20 Civ. 9808 (VM), 2021 WL 2665955, at \*5 (S.D.N.Y. June 29, 2021) (emphasis added). But the Complaint fails to allege facts showing that Empower actually bills

itself to D.C. consumers as a licensed, private vehicle-for-hire company that is complying with D.C. laws applicable to such companies. If anything, the Complaint alleges the opposite.

What's more, just like the prior complaint in *Woodford*, "nowhere [do Plaintiffs] allege that [they] reviewed, let alone relied, on" Empower's alleged misrepresentations "before requesting a driver using defendant's app." Ex. A at 10 (citation omitted); *see also id.* at 11 ("plaintiff has not alleged, however, that she was misled by any of defendant's alleged misstatements"). That "gap" in pleading remains just as "fatal" here as it was in *Woodford*. *Id.* at 10.

Plaintiffs allege Empower violated the CPPA by "fail[ing] to state a material fact if such failure tends to mislead" or "us[ing] innuendo or ambiguity as to a material fact, which has a tendency to mislead." In support of a deception-by-omission theory, the Complaint points to Empower's public statement that it "does not currently provide insurance to drivers." Cplt. ¶ 41. But there is no dispute that this statement is entirely accurate. Likewise, there is no dispute that Empower accurately discloses that, in fact, it requires third-party background checks on drivers who wish to use its software for their businesses. As a matter of both law and logic, no reasonable consumer would consider "an accurate statement to be misleading." *Saucier v. Countrywide Home Loans*, 64 A.3d 428 (D.C. 2013). None of these *truthful* statements of fact plausibly mislead D.C. consumers.

**B.    The Complaint fails to state a CPPA claim premised on Empower's alleged violations of D.C. laws governing private vehicle-for-hire companies**

Plaintiffs also assert that Empower's alleged violations of the insurance-coverage, background-check, and vehicle-inspection requirements imposed on private vehicle-for-hire companies, under D.C. Code §§ 50-301.29b & 29c, are per se violations of the CPPA strictly

enforceable by Plaintiffs (and the putative class). Cplt. ¶ 73. That attempt to expand the CPPA into a free-floating private right of action to enforce all business laws and regulations is without basis.

The CPPA, at D.C. Code § 28-3904, prohibits unfair or deceptive trade practices first by listing (and in some instances expanding on) common-law theories of such liability, including the misrepresentation and omission practices addressed above. *See Fort Lincoln Civic Ass'n, Inc. v. Fort Lincoln New Town Corp.*, 944 A.2d 1055, 1074–75 (D.C. 2008). After these general, common-law offenses, it lists specific provisions or acts where a violation of that provision is a per se violation of the CPPA. D.C. Code § 28-3904(w)–(ll). These include violations of the District of Columbia Consumer LayAway Plan Act, Rental Housing Locator Consumer Protection Act, Automobile Consumer Protection Act of 1984, and the Real Property Credit Line Deed of Trust Act of 1987, as well as other D.C. Code provisions.

Violations of the requirements imposed on private vehicle-for-hire companies under the VHIAA are not per se unfair or deceptive trade practices actionable under the CPPA. The CPPA does not list the VHIAA or its insurance-coverage and background-check requirements among the statutes that consumers are authorized to enforce under the CPPA. The fact that some statutes are specifically included in § 28-3904 means that others are excluded. *See J.P. v. District of Columbia*, 189 A.3d 212, 218 (D.C. 2018) (holding that a statute's delineation of specific circumstances under which that statute applies "strongly support[s] the conclusion" that other circumstances were not intended also to satisfy the statute). The D.C. Council sensibly leaves the enforcement of many statutes and regulations to means other than private consumer-protection lawsuits. Here, the District created the Department of For-Hire Vehicles and gave it exclusive and comprehensive powers to enforce legal requirements imposed on private vehicle-for-hire companies. D.C. Code § 50-301.07. Consistent with the existence of the public enforcement scheme, the Vehicle-for-Hire

Innovation Amendment Act of 2014 does not provide riders a private cause of action to enforce those laws and regulations.

Plaintiffs' attempt to manufacture such a private right of action by expanding the CPPA is meritless. A court in this District has already rejected the notion that the violation of laws not listed in the CPPA (and which do not convey their own private right of action) can give rise to per se claims under the CPPA. *Ihebereme v. Capital One, N.A.,* 933 F. Supp. 2d 86, 109 (D.D.C. 2013), *aff'd* 573 F. App'x 2 (D.C. Cir. 2014). In *Ihebereme*, a plaintiff claimed that a defendant's failure to record of deed of trust, in violation of D.C. Code § 47-1431(a), was an actionable unfair trade practice under the CPPA. The court rejected that claim, and held that "there is no claim under the [CPPA] even if defendants had recorded the deed late" in violation of D.C. law. *Id.* The court emphasized that the underlying recordation statute "does not provide for a private right of action," and that the CPPA "conspicuously does not mention D.C. Code § 47-1431" among the provisions that consumers may strictly enforce. *Id.* To the extent the violation of an unlisted statute can amount to an unfair or deceptive trade practice, it must involve a misrepresentation, omission, or other practice otherwise encompassed by the statutory term. *See Mann v. Bahi*, 251 F. Supp. 3d 112, 122 (D.D.C. 2017); *see supra* (addressing the Complaint's misrepresentation-based theory of CPPA liability).

Likewise, Plaintiffs' implied certification theory is inconsistent with D.C. law. Under Plaintiff's theory, any business operating in the District impliedly certifies that it complies with each and every legal and regulatory requirement that the D.C. Code and municipal regulations place upon it, with any misstep giving rise to at least a $1,500 statutory damage award to any complaining consumer (or, as here, to a massive putative class of *every* conceivable consumer). That application of the CPPA ignores the statutory text and defies common-sense. The D.C.

Council did not create the CPPA to serve as an untethered cause of action to enforce any law on the books against D.C. businesses. Nor has the District deputized every D.C. resident as a DFHV enforcement officer to prosecute supposed regulatory violations.

### III.    The Complaint does not state unjust enrichment or disgorgement claims

Plaintiffs also fail to state unjust-enrichment and disgorgement claims against Empower. "The elements of an unjust enrichment claim," under D.C. law, "are that '(1) the plaintiff conferred a benefit on the defendant; (2) the defendant retains the benefit; and (3) under the circumstances, the defendant's retention of the benefit is unjust." *Glasgow v. Camanne Mgmt. Inc.*, 261 A3d 208, 219 (D.C. 2021) (quoting *News World Comms., Inc. v. Thompsen*, 878 A.2d 1218, 1222 (D.C. 2005)).  A claim for disgorgement likewise "sounds in principles of unjust enrichment." *Shalom v. Smith*, 304 A.3d 983, 986 (D.C. 2023).

Plaintiffs fail to state these closely related claims for two reasons:  First, Plaintiffs do not allege that they ever conferred *any* benefit whatsoever *on Empower*. Instead, as their own Complaint correctly alleges, 100% of the fares they paid for their rides went to the drivers who provided them. Cplt. ¶¶ 15, 22, 41. Second, Plaintiffs do not allege that they received anything different from those drivers than exactly what they requested at exactly the price they agreed to pay. *See* Cplt. ¶¶ 55-63. There is nothing remotely "unjust" about that. There is therefore no plausible basis for any unjust-enrichment or disgorgement claim here.

### CONCLUSION

For the reasons stated herein, the Court should dismiss Plaintiffs' Complaint and award attorney's fees and any other appropriate relief.

Dated: March 7, 2025                    Respectfully submitted,

                                        */s/ Matthew M. Madden*
                                        Matthew M. Madden (D.C. Bar # 991139)
                                        Lauren C. Andrews (D.C. Bar # 888314680)
                                        KRAMER LEVIN NAFTALIS & FRANKEL LLP
                                        2000 K Street NW, 4th Floor
                                        Washington, DC 20006
                                        Phone (202) 775-4500
                                        Fax: (202) 775-4510
                                        mmadden@kramerlevin.com
                                        landrews@kramerlevin.com

                                        *Counsel for Defendant Empower*

## CERTIFICATE OF SERVICE

I hereby certify that on this 7th day of March, 2025, a copy of the foregoing was served electronically on all counsel of record through the court's electronic filing system.

/s/ Lauren C. Andrews
Lauren C. Andrews (D.C. Bar # 888314680)