**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| MICHAEL POPE *et al.*, | |
| *Plaintiffs*, | |
| v. | Civil Action No. 1:24-cv-03540 (CJN) |
| YAZAM, INC. D/B/A EMPOWER, | |
| *Defendant*. | |

**MEMORANDUM OPINION**

Plaintiffs are three individuals who have collectively taken over 100 trips through a rideshare company called Empower.  Seeking to represent a class of similar customers, Plaintiffs claim that Empower has violated the District of Columbia's insurance and other consumer-protection requirements for vehicle-for-hire companies.  Empower moves to dismiss, arguing (among other things) that Plaintiffs suffered no injuries and thus lack Article III standing.  The Court agrees, grants the motion, and dismisses this case.

## I.    Background

The District of Columbia's Consumer Protection Procedures Act, or CPPA, prohibits engaging in "an unfair or deceptive trade practice, whether or not any consumer is in fact misled, deceived, or damaged thereby."  D.C. Code § 28-3904.  The Act prohibits making representations or omissions as to "a material fact" when those representations or omissions have "a tendency to mislead," *id.*, and provides a private cause of action for "relief from the use of a trade practice in violation of a law of the District."  *Id.* § 28-3905(k)(1)(A).

A separate law, the Vehicle-for-Hire Innovation Amendment Act of 2014, D.C. Code § 50-301 *et seq.*, regulates any "[p]rivate vehicle-for-hire company," defined as "an organization . . .

1

operating in the District that uses digital dispatch to connect passengers to a network of private vehicle-for-hire operators." D.C. Code § 50-301.03(16B). Such companies must comply with several regulatory requirements, three of which are relevant here. First, such companies must "maintain," or ensure that their drivers maintain, "a primary automobile liability insurance policy that provides coverage of at least $1 million per occurrence for accidents involving a private vehicle-for-hire operator at all times when the operator is engaged in a prearranged ride." *Id.* § 50-301.29c(a). Second, the companies must disclose the Act's insurance requirements on their websites. *Id.* § 50-301.29c(h). Third, before approving a driver to provide rides, vehicle-for-hire companies must have an accredited third-party conduct background checks and must permanently disqualify applicants who fail those background checks. *Id.* §§ 50-301.29b(b), (c); 50-301.29a(6).

Defendant Yazam Inc., doing business as Empower, is one such vehicle-for-hire company, having operated a rideshare service in the District since at least June 1, 2020. ECF No. 1 ("Compl.") ¶ 11–12.[1] During the period covered by the complaint, Empower marketed itself as a cheaper alternative to Uber and Lyft, and, as of February 2024, had provided more than two million rides in D.C. to more than 150,000 riders. *Id.* ¶ 13–15. Empower's core pitch was (and apparently still is) that it is better for both drivers and riders than Uber or Lyft. *Id.* ¶ 22. But in the process of downloading the Empower smartphone application, setting up an account, and ordering rides, prospective riders were never informed of how Empower delivered what it represented to be a service superior to Uber or Lyft at a discounted price. *Id.* ¶ 25.

Plaintiffs purport to "reveal[]" that "secret," alleging that Empower achieved its lower prices by flouting the regulatory requirements that apply to other rideshare companies operating

---

[1] The Court accepts as true the factual assertions in Plaintiffs' complaint for purposes of evaluating the motion to dismiss. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009).

in the District.  *Id.* ¶¶ 25–29.  Specifically, Plaintiffs allege that Empower did not provide drivers with the required insurance coverage, did not require drivers to maintain such coverage, did not verify whether drivers maintained any insurance at all, and did not disclose the governing insurance requirements on its website.  *See id.* at ¶¶ 30–40.  Plaintiffs further allege that consumers were never informed that Empower's lower prices were made possible by its alleged noncompliance with insurance requirements.  *Id.* ¶ 40.  By failing to verify required insurance coverage, Plaintiffs allege, Empower exposed passengers and drivers to the risk of financial harm in the event of a crash.  *Id.* ¶ 43.  Plaintiffs also allege that Empower did not perform the background checks required by D.C. Code § 50-301.29b(b).  *Id.* ¶ 46.

As to the specific plaintiffs themselves, Michael Pope took dozens of Empower rides beginning or ending in the District; Sarah Abel took four rides in May 2023; and Jordynn Goins took more than ninety rides between February and August 2024.  *Id.* ¶¶ 55–63.  Plaintiffs do not allege that any crash occurred.  Rather, they allege that they each believed that Empower was a legally operating rideshare company regulated by the District and subject to its consumer-safety protections, but that had they known that Empower was violating those requirements, they would not have booked rides through the platform.  *Id.*  Plaintiffs seek to represent a class of all Empower passenger-customers who took rides beginning or ending in the District during the relevant period.  *Id.* ¶¶ 64–70; ECF No. 13.

Empower moves to dismiss, arguing that Plaintiffs lack Article III standing and fail to state a claim.  ECF No. 12 ("Mot.") at 5–10.

## II.     Legal Standard

Article III of the Constitution "confines the federal judicial power to the resolution of 'Cases' and 'Controversies.'"  *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021).  To satisfy that requirement, a plaintiff must establish that he has standing to sue, meaning, at a minimum,

that he has (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992). At the pleading stage, plaintiffs "must clearly allege facts demonstrating each element." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (citation modified). The Court must "accept the well-pleaded factual allegations as true and draw all reasonable inferences from those allegations in the plaintiff[s'] favor." *Arpaio v. Obama*, 797 F.3d 11, 19 (D.C. Cir. 2015). But "[t]hreadbare recitals of the elements of [standing], supported by mere conclusory statements, do not suffice," and courts "do not assume the truth of legal conclusions." *Id.* (citation omitted). Because defects in standing are "defect[s] in subject matter jurisdiction," if a federal court lacks jurisdiction, it must dismiss the action. *Haase v. Sessions*, 835 F.2d 902, 906 (D.C. Cir. 1987); Fed. R. Civ. P. 12(b)(1), (h)(3).

### III.    Analysis

Empower argues that Plaintiffs did not suffer concrete injuries and thus lack Article III standing to press their claims. Mot. at 6. The Court agrees that Plaintiffs have failed to allege a cognizable injury in fact.

To bring a claim in federal court, "a plaintiff must have a 'personal stake' in the case—in other words, standing." *TransUnion*, 594 U.S. at 423 (quoting *Raines v. Byrd*, 521 U.S. 811, 821 (1997)). Demonstrating that personal stake requires plaintiffs to sufficiently answer the question, "What's it to you?" *Id.* (citing Antonin Scalia, *The Doctrine of Standing as an Essential Element of the Separation of Powers*, 17 Suffolk U. L. Rev. 881, 882 (1983)). Courts thus require plaintiffs to show that they have "suffered an injury in fact that is concrete, particularized, and actual or imminent." *Id.* As in *TransUnion*, "[t]he question in this case focuses on the Article III requirement that [Plaintiffs'] injury in fact be 'concrete'—that is, 'real, and not abstract.'" *Id.* at 424 (quoting *Spokeo*, 578 U.S. at 340). After all, a plaintiff does not "automatically satisf[y] the

4

injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right." *Spokeo*, 578 U.S. at 341. Rather, "Article III grants federal courts the power to redress harms that defendants cause plaintiffs, not a freewheeling power to hold defendants accountable for legal infractions." *TransUnion*, 594 U.S. at 427.

Applying those principles, Plaintiffs have failed to allege that they suffered a cognizable injury. Their primary argument is that, at least for "claims brought under the CPPA," "the act of being misled *is* the harm." ECF No. 14 ("Opp.") at 14–15. Relying principally on *Mann v. Bahi*, 251 F. Supp. 3d 112 (D.D.C. 2017), Plaintiffs argue that they have "plainly alleged that they, like their fellow consumers, were misled in ways that violate the CPPA." Opp. at 16. In Plaintiffs' view, *Mann* established "that being misled . . . does in fact constitute harm for purposes of standing." *Id.* at 21. But Plaintiffs overread *Mann*, in which the plaintiffs alleged actual injuries in the form of theft and sub-par care; the decision therefore centered on the question of traceability, not injury in fact. *See Mann*, 251 F. Supp. 32 at 119. Further, Plaintiffs ignore more relevant CPPA precedents, which make clear that "plaintiffs flunk[] the injury-in-fact requirement" if they can "only demonstrate[] 'bare procedural violations, divorced from any concrete harm.'" *Wheeler v. Panini Am., Inc.*, No. 22-cv-00763, 2022 WL 17039208, at *7 (D.D.C. Nov. 17, 2022) (citing *TransUnion*, 594 U.S. at 440).[2] In short, *Mann* cannot bear the weight that Plaintiffs place on it.[3]

---

[2] *See also Hancock v. Urb. Outfitters, Inc.*, 830 F.3d 511, 514 (D.C. Cir. 2016) (CPPA plaintiffs lacked standing where they failed to allege "any cognizable injury" resulting from an alleged CPPA violation); *Silvious v. Snapple Beverage Corp.*, 793 F. Supp. 2d 414, 417 (D.D.C. 2011) (collecting cases for the proposition that "a lawsuit under the CPPA does not relieve a plaintiff of the requirement to show a concrete injury-in-fact to himself").

[3] Plaintiffs also invoke *Floyd v. Bank of America Corp.* for the proposition that being misled into purchasing a service satisfies standing requirements in CPPA suits. 70 A.3d 246, 251 (D.C. 2013); Opp. at 21. But *Floyd* concerned standing in D.C. courts, not the stricter requirements of Article III. And, like *Mann*, *Floyd* precedes *TransUnion* and does not bind the Court.

Plaintiffs are on stronger ground where they attempt to frame the fares they paid as the type of "monetary injury" that *TransUnion* recognized as sufficiently concrete to establish standing. 594 U.S. at 425. Specifically, Plaintiffs argue that because they were misled into entering transactions they otherwise would have avoided, the money spent on those rides itself constitutes concrete harm. Opp. at 20–22. Plaintiffs can plead such claims in one of two ways: First, they can allege that they were "harmed because defendants' fraud induced them to buy [services] they never would have bought otherwise." *Earl v. Boeing Co.*, 53 F.4th 897, 902 (5th Cir. 2022). Second, they can allege that they "were harmed because defendants' fraud allowed [Empower] to set higher fares . . . than they could or would have done absent the fraud." *Id.*; *see also In re Recalled Abbott Infant Formula Prods. Liab. Litig.*, 97 F.4th 525, 529 (7th Cir. 2024) (describing these theories as the "benefit of the bargain" and the "premium price" theories).

Plaintiffs take the first route, arguing that "they would not have purchased the ridesharing service from Empower but for" Empower's alleged misrepresentations. Opp. at 20.[4] The problem for Plaintiffs is, even accepting that statement as true, a plaintiff "assert[s] no concrete injury" where he pays for a given product and "receive[s] just that." *Earl*, 53 F.4th at 902. In other words, because Plaintiffs do not allege that they suffered any actual harm during their rides, the convenience they enjoyed in the past undermines their case in the present. *See Krukas v. AARP, Inc.*, No. 18-cv-1124, 2021 WL 5083443, at *10 (D.D.C. Nov. 2, 2021) (holding that when consumers obtain "the benefit of [their] bargain, the purchase of an unlicensed good or service is

---

[4] *See also* Compl. ¶ 78 ("Had Plaintiffs known the truth—that Empower was willfully violating the District of Columbia's consumer-protection rideshare laws, including those requiring adequate insurance, driver background checks, and annual vehicle safety inspections to protect consumers— they would not have requested or taken rides through Defendant Empower.").

6

not itself an injury in fact").[5]  "More succinctly" still, "buyer's remorse, without more, is not a cognizable injury under Article III of the United States Constitution."  *In re Johnson & Johnson Talcum Powder Prods. Mktg., Sales Pracs. & Liab. Litig.*, 903 F.3d 278, 281 (3d Cir. 2018).[6]

As to the second route, the "premium price" theory similarly allows a plaintiff to "seek[] to recover for a purported economic injury rather than any risk of physical injury." *Earl*, 53 F.4th at 902.  To prevail on such a claim, a plaintiff can argue that "if the public had known about defendants' fraudulent scheme," demand "would have dropped," so consumers "would have paid less." *Id.* "But even at the pleading stage, a plaintiff must set forth sufficient factual allegations that, if proven true, would permit a factfinder to determine that she suffered at least *some* economic injury." *In re Johnson & Johnson*, 903 F.3d at 287.  Plaintiffs do not meet that bar; if anything, they allege that Empower *under*charged for rides relative to Uber and Lyft.  Perhaps Plaintiffs' contention is that in a world where Empower's alleged violations were well known, they would have paid even less for their rides.   But Plaintiffs do not expressly make this argument.  And such a "theory of injury rests on [at least] two unsupportable inferences": first, that Empower "would have continued offering the same [services] but with a price discount to compensate for the

---

[5] The analogy that Plaintiffs invoke to argue that they received less than they bargained for—likening Empower to "a used-car dealer" who "tamper[s] with a car's odometer so that it shows 10,000 miles instead of 50,000"—is not convincing.  Opp. at 22.  While a purchaser of that car could sue for fraud on the ground that the car was worth less than what he paid, Plaintiffs' theory of harm is less clear.  As Empower notes, Plaintiffs "each got exactly what they paid for—incident-free rides at the 'discounted' prices they paid."  ECF No. 15 at 5.

[6] *See also In re Recalled Abbott Infant Formula*, 97 F.4th at 529 (holding that an asserted injury was not cognizable because, "[w]hen purchasing the [allegedly risky product], plaintiffs received what they asked for" and thus suffered "no loss of the benefit of the bargain"); *id.* at 531 ("Other circuits have agreed there is no economic injury sufficient to confer standing where plaintiffs received what they bargained for."); *In re Johnson & Johnson*, 903 F.3d at 288 (affirming dismissal of financial harm claims where plaintiff had "received the benefit of her bargain and [thus had] suffered no economic injury"); *Austin-Spearman v. AARP & AARP Servs. Inc.*, 119 F. Supp. 3d 1, 12 (D.D.C. 2015) (plaintiff lacked standing where she "received the benefit of her bargain").

heightened risk," and second, that the District "would have permitted" Empower to continue operating "even with full knowledge of" the alleged violations. *Earl*, 53 F.4th at 903. Plaintiffs do not show why either inference would be plausible, and the Court "will not make arguments for the litigants." *Loumiet v. United States*, 65 F. Supp. 3d 19, 25 (D.D.C. 2014).

## IV.    Conclusion

To sum up: Plaintiffs do not allege that they suffered an accident, or that any insurance gap left them uncovered, or that any driver with a checkered background caused them harm, or even that any one of them was personally affected by any alleged risk in a concrete way. Plaintiffs are thus "not seeking to remedy any harm to [himself or] herself but instead [] merely seeking to ensure a defendant's compliance with regulatory law (and, of course, to obtain some money via the statutory damages)." *TransUnion*, 594 U.S. at 427–28 (internal quotation marks omitted). Because "[t]hose are not grounds for Article III standing," *id.* at 428, the Court will grant Empower's motion to dismiss. A separate Order will issue contemporaneously.

DATE:  March 31, 2026

CARL J. NICHOLS
United States District Judge

8